# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### Assigned on Briefs January 24, 2006

## MICHELLE ALLEN & MARK ALLEN v. STATE OF TENNESSEE

**Appeal from the Circuit Court for Robertson County**
**No. 02-0333 & 02-0333A     Michael R. Jones, Judge**

---

**No. M2005-00601-CCA-R3-PC** - Filed March 13, 2006

---

The Robertson County Grand Jury indicted Mark Allen with one count of exhibition of materials harmful to a minor, one count of especially aggravated sexual exploitation, and one count of rape of a child. Michelle Allen was indicted with three counts of rape of a child. Following a jury trial, Mr. Allen was convicted of all three counts, and Mrs. Allen was convicted for two counts of rape of a child. The third count was dismissed. The trial court sentenced Mr. Allen to an effective sentence of twenty-four years and Mrs. Allen to an effective sentence of twenty-one years. The defendants appeal the judgments of the trial court. They argue that the evidence was insufficient to support their convictions and that the trial court erred in sentencing them. We affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court are Affirmed**

JERRY L. SMITH, J., delivered the opinion of the court, in which THOMAS T. WOODALL, and ROBERT W. WEDEMEYER, JJ., joined.

Roger E. Nell, District Public Defender, Clarksville, Tennessee, for the appellant, Mark Allen and Linda S. Fizer, Springfield, Tennessee for the appellant, Michelle Allen

Paul G. Summers, Attorney General and Reporter; Jane L. Beebe, Assistant Attorney General; John Carney, District Attorney General; and Dent Morriss, Assistant District Attorney General, for the appellee, State of Tennessee.

# OPINION

The victim's mother met defendant Mr. Allen though a friend at work. Because the victim's father lived in Florida and did not have much contact with D.M.[1], the twelve-year-old victim, D.M.'s mother was hoping that Mr. Allen would be a good male influence for D.M. On several occasions, in the winter of 2001 and spring of 2002, D.M. visited the two defendants, Mr. and Mrs. Allen, at their home. In July of 2002, D.M. told his mother that the defendants had been engaging in inappropriate sexual activity with him. The victim's mother called the police. Using a tape recorder given to her by the police, she recorded a telephone conversation between Mr. Allen and D.M. The victim's mother then took this recording to the police. After hearing the recording, Detective Mike Carlisle and a few other officers went to the Allen's home. Mr. Allen signed a consent to search form. The officers found a pornographic videotape described by D.M. as the one he had viewed, other pornographic videotapes, and other sexual paraphernalia. Mr. Allen waived his <u>Miranda</u> rights and was questioned at the Robertson County Sheriff's Office on July 16, 2002. The following interview was conducted by Detective Carlisle:

Carlisle:    Today is July the 16th of 2002, it's approximately 6:15 in the afternoon. This is Detective Mike Carlisle along with Mr. Mark Allen. Mr. Allen has agreed to sit down and give me an interview. Mark I believe you have been read your rights and you did sign that, is that correct?

. . . .

Carlisle:    OK. Now you're sitting and looking at an offense report that [the victim] had made a report to the Sheriff's office about some inappropriate things going on and I think you want to give your side of the story. Is that correct?

. . . .

Allen:    OK. The ugh, the statement that he gives, the complainant stated that he was over at Mark Allen's house a family friend and that he has and that Mr. Allen asked him to look at his porno magazine. I didn't ask him to look at any porno magazines. He actually came across some porno magazines and then he asked you know if he could see them and I was like well no you are too young and I won't tell so on and so on until yes, I did agree to let him look at the porno magazines. Against my better judgment but anyhow. So, ugh, talked about

_____

[1] It is the policy of this Court to refer to minor victims by their initials.

-2-

different things to do while having sex, yes we did talk about sex. Uhm, as to how to have it. I don't remember all of that, ugh, that I would make him touch his body in private areas is getting into an area that I want to hold on down 'til . . . .

. . . .

Carlisle: Now let me ask you this while we're, while you're looking at that statement. Did [the victim] at your residence did he look at and view pornographic material as far as movies and things like that?

Allen: I don't know how much . . . .

Carlisle: I understand . . . .

Allen: because I was not in the house at all times but ugh . . .

Carlisle: He did like to watch those types of movies?

Allen: I think he did, yeah.

. . . .

Carlisle: The other situation that [the victim] told us about.

Allen: About me touching him and him touching me?

Carlisle: Right.

Allen: Ugh, that did happen.

Carlisle: That did happen. Was there mutual oral sex? Did you place [the victim's] penis in your mouth and did [the victim] place your penis in his mouth? Even for a slight moment.

Allen: There was sexual . . .

Carlisle: But it did happen?

Allen: Yes.

. . . .

Carlisle: It's sometime, I think you've been knowing [the victim] for approximately two years, is that correct?

Allen: Yeah.

Carlisle: You kind of met [the victim] through his mom who you work with at your plant.

Allen: Right.

Carlisle: Ugh, was there any other situations where you and [the victim] may have got mutual masturbation or anything like that or did all of that happen the same incident that ya'll had the oral sex?

Allen: I think it happened the same incident. I . . .

Carlisle: OK.

Allen: I'm thinking it did.

-3-

. . . .

Allen:          Well can I say one more thing?
Carlisle:       Yes sir you sure can.

. . . .

Allen:          Anything that ugh, anything that my wife might have done was total
                coercion and manipulation on my part.


Also on July 16, 2002, the defendant Mrs. Allen made a written statement. She stated:


Approximately 1 year ago , [the victim], who is a 12 [year old] boy from [  ], stayed
at my home in Robertson County Tennessee one Friday or Saturday night. My
husband and I and [the victim] were setting in floor [sic] of living room playing
cards. [The victim] is always [sic] "that" night wanted to run around the house nude.
On that night, both [the victim] and I ended up nude, at some point, I performed Oral
Sex on [the victim], my husband was present. Also, I don't recall exactly but I think
[the victim] performed Oral Sex on me. Also [the victim] attempted to have sex with
me, and he did penetrate me with his penis,. [sic] I don't recall if he penetrated me
with his finger or not. That is the only time I ever had sex with [the victim]. A short
time later my husband Mark had sex with [the victim] as well. Mark videotaped the
sex, I saw the video and Mark was laying down and [the victim] was giving Mark a
blow job. I believe the bed was in the living room at that time. The videotape was
destroyed "erased" a short time later. [The victim] still today is calling wanting to
come back to our home.


On September 25, 2002, the Robertson County Grand Jury indicted Mr. Allen with one count
of exhibition of materials harmful to a minor, one count of especially aggravated sexual exploitation,
and one count of rape of a child. On the same date, the Robertson County Grand Jury indicted Mrs.
Allen with three counts of rape of a child. The defendants went to trial on October 13 and 14, 2003.
At the conclusion the evidence, the trial court dismissed count two of the indictment against Mrs.
Allen. The jury found the defendants guilty of all other counts. The trial court held a sentencing
hearing on November 21, 2003 for both defendants. The trial court sentenced Mr. Allen to eleven
months and twenty-nine days for exhibition of material harmful to a minor, ten years for especially
aggravated sexual exploitation, and twenty-four years for rape of a child, to run concurrently. Mrs.
Allen was convicted of two counts of child rape, however, the trial court merged the two counts for
sentencing purposes because the conduct occurred in the same episode. The trial court sentenced
Mrs. Allen to twenty-one years for one count of rape of a child. Defendant Mrs. Allen filed a
petition for post-conviction relief on November 19, 2004 and Defendant Mr. Allen filed a petition

for post-conviction relief on November 22, 2004. The trial court ordered that both defendants be granted a delayed appeal on February 4, 2005. The defendants then filed a notice of appeal to this Court.

## ANALYSIS

The defendants in this case filed separate briefs. However, both defendants argue on appeal that the evidence was insufficient to support their convictions, the sentences imposed by the trial court were unreasonable and violated their Sixth Amendment right to trial by jury.

### Sufficiency of the Evidence

When a defendant challenges the sufficiency of the evidence, this Court is obliged to review that claim according to certain well-settled principles. A verdict of guilty, rendered by a jury and "approved by the trial judge, accredits the testimony of the" State's witnesses and resolves all conflicts in the testimony in favor of the State. State v. Cazes, 875 S.W.2d 253, 259 (Tenn. 1994); State v. Harris, 839 S.W.2d 54, 75 (Tenn. 1992). Thus, although the accused is originally cloaked with a presumption of innocence, the jury verdict of guilty removes this presumption "and replaces it with one of guilt." State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982). Hence, on appeal, the burden of proof rests with the defendant to demonstrate the insufficiency of the convicting evidence. Id. The relevant question the reviewing court must answer is whether any rational trier of fact could have found the accused guilty of every element of the offense beyond a reasonable doubt. See Tenn. R. App. P. 13(e); Harris, 839 S.W.2d at 75. In making this decision, we are to accord the State "the strongest legitimate view of the evidence as well as all reasonable and legitimate inferences that may be drawn therefrom." See Tuggle, 639 S.W.2d at 914. As such, this Court is precluded from re-weighing or reconsidering the evidence when evaluating the convicting proof. State v. Morgan, 929 S.W.2d 380, 383 (Tenn. Crim. App. 1996); State v. Matthews, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990). Moreover, we may not substitute our own "inferences for those drawn by the trier of fact from circumstantial evidence." Matthews, 805 S.W.2d at 779. Further, questions concerning the credibility of the witnesses and the weight and value to be given to evidence, as well as all factual issues raised by such evidence, are resolved by the trier of fact and not the appellate courts. State v. Pruett, 788 S.W.2d 559, 561 (Tenn. 1990).

The evidence at trial showed that Mr. Allen showed D.M. a pornographic video and that both defendants had sexual relations with the victim. Mrs. Allen and D.M. engaged in fellatio, as well as vaginal intercourse on the same evening. At a later date, Mr. Allen and D.M. engaged in mutual fellatio, which Mr. Allen videotaped. Mr. Allen showed this tape to his wife, then erased the tape. D.M. continued to visit the Allens on other occasions following these acts.

**Mark Allen**

In his brief, Mr. Allen asks this Court to review the sufficiency of the evidence. He does not make an argument with regard to any specific insufficiency. The State argues that the evidence was sufficient to support his convictions.

The jury convicted Mr. Allen of one count of exhibition of materials harmful to a minor, one count of especially aggravated sexual exploitation, and one count of rape of a child. Exhibition of materials harmful to a minor is found at Tennessee Code Annotated section 39-17-911 which states, "(a) It is unlawful for any person to knowingly sell or loan for monetary consideration or otherwise exhibit or make available to a minor; (1) Any picture, photograph, drawing, sculpture, motion picture film, video game, computer software game, or similar visual representation or image of a person or portion of the human body, which depicts nudity, sexual conduct, excess violence, or sado-masochistic abuse, and which is harmful to minors . . . ."

At trial, the victim testified that the defendant showed him an adult cartoon. Detective Carlisle testified that the victim told him about the tape, and when the officers searched the defendants' home, they were able to seize the tape. The tape in question was then shown to the jury. In addition, in his interview the defendant admitted showing the victim pornographic material, which had been transcribed and was admitted into evidence at trial. The victim's testimony and Detective Carlisle's testimony were uncontroverted and corroborated by the defendant's own interview. Therefore, we conclude that there was overwhelming evidence for a rational trier of fact to determine that the defendant showed the victim a videotape which depicted nudity and sexual conduct.

The offense of especially aggravated sexual exploitation of a minor is found at Tennessee Code Annotated section 39-17-1005, which states, "(a) It is unlawful for a person to knowingly promote, employ, use, assist, transport or permit a minor to participate in the performance or in the production of material which includes the minor engaging in: (1) Sexual activity . . . ." At trial, the victim testified that he and the defendant engaged in mutual fellatio. He also stated that the defendant, Mr. Allen, videotaped the sexual act with his knowledge. This testimony was also uncontroverted at trial. In addition, Ms. Allen stated in her written statement that the defendant videotaped himself engaging in mutual fellatio with the victim. She also stated that she saw this videotape before her husband erased it. We conclude that the evidence is more than sufficient to support a conviction for especially aggravated sexual exploitation of a minor.

Rape of a child is found at Tennessee Code Annotated section 39-13-522, which states, (a) Rape of a child is the unlawful sexual penetration of a victim by the defendant or the defendant by the victim, if such victim is less than thirteen (13) years of age." At trial, the victim's birth certificate was admitted into evidence. Also, the victim testified that he was thirteen at the time of the trial on October 13, 2003. The incidents occurred more than a year before the trial, therefore, the victim was clearly less than thirteen years of age at the time of the incidents leading to the defendants' indictments. As stated above, the victim testified at trial that he and the defendant, Mr. Allen, engaged in mutual fellatio. This testimony was uncontroverted. Both defendants, in separate interviews with the police, admitted that Mr. Allen had sexual relations with the victim. Once again,

we conclude that the evidence was more than sufficient to support Mr. Allen's conviction for rape of a child.

### Michelle Allen

Mrs. Allen also argues that the evidence was insufficient to support her convictions for rape of a child. Rape of a child is found at Tennessee Code Annotated section 39-13-522, which states, (a) Rape of a child is the unlawful sexual penetration of a victim by the defendant or the defendant by the victim, if such victim is less than thirteen (13) years of age." As we concluded above, the victim was clearly under thirteen years of age at the time of the incidents leading to the indictments. The victim testified at trial that he and the defendant, Mrs. Allen, engaged in both oral sex and vaginal sex. This testimony was uncontroverted. In addition, in her statement, the defendant admitted to having both oral and vaginal sex with the victim. Therefore, there is overwhelming evidence to support Ms. Allen's conviction for two counts of rape of a child.

For the above reasons, we find that there is sufficient evidence to support the convictions of both defendants. Therefore, this issue is without merit.

### Sentencing

Both defendants argue that their sentences were excessive. "When reviewing sentencing issues . . . , the appellate court shall conduct a de novo review on the record of such issues. Such review shall be conducted with a presumption that the determinations made by the court from which the appeal is taken are correct." Tenn. Code Ann. § 40-35-401(d). "However, the presumption of correctness which accompanies the trial court's action is conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991). In conducting our review, we must consider the defendant's potential for rehabilitation, the trial and sentencing hearing evidence, the pre-sentence report, the sentencing principles, sentencing alternative arguments, the nature and character of the offense, the enhancing and mitigating factors, and the defendant's statements. Tenn. Code Ann. §§ 40-35-103(5), -210(b); Ashby, 823 S.W.2d at 169. We are to also recognize that the defendant bears "the burden of demonstrating that the sentence is improper." Ashby, 823 S.W.2d at 169.

In balancing these concerns, a trial court should start at the presumptive sentence, enhance the sentence within the range for existing enhancement factors, and then reduce the sentence within the range for existing mitigating factors. Tenn. Code Ann. § 40-35-210(e). No particular weight for each factor is prescribed by the statute. See State v. Santiago, 914 S.W.2d 116, 125 (Tenn. Crim. App. 1995). The weight given to each factor is left to the discretion of the trial court as long as it

comports with the sentencing principles and purposes of our code and as long as its findings are supported by the record. Id.[2]

## Mark Allen

The trial court sentenced Mr. Allen to eleven months and twenty-nine days for exhibition of material harmful to a minor which is a Class A misdemeanor, ten years at thirty percent for especially aggravated sexual exploitation of a minor, which is a Class B felony, and twenty-four years at 100 percent for rape of a child. All these sentences were to run concurrently. The defendant argues on appeal that the trial court did not give adequate weight to the mitigating factors and misapplied two enhancement factors, (1) that the defendant was a leader in the commission of the offense and (2) that the offense was committed to gratify the defendant's desire for pleasure or excitement.

The trial court made the following findings at the sentencing hearing:

> We've gone over the ranges of punishment at the beginning of this; I'll redo that. Class A misdemeanor in count four of exhibition of material harmful to minors; and count five is especially aggravated sexual exploitation, which is that videotape that Mr. Allen states that he erased and was not found in the search of his home, that is a class B felony with a range of punishment of eight to 12 years. That's not a 100 percent sentence. That is a range one standard.

> And then in count six is the child rape, it's 15 to 25 with presumptive sentence of 20 years. The presumptive sentence means the beginning point, and from that point the Court must weight the mitigating and enhancement factors. Presumptive sentence for a class A felony shall be the mid point of the range if there are no enhancement or mitigating factors.

> . . . .

[2] We note that the Tennessee Supreme Court has determined that despite the ability of trial judges to set sentences above the presumptive sentence based on the finding of enhancement factors neither found by a jury or admitted by a defendant, Tennessee's sentencing structure does not violate the Sixth Amendment and does not conflict with the holdings of Blakely v. Washington, 542 U.S. 296 (2004), United States v. Booker, 543 U.S. 220 (2005), or United States v. FanFan, the case consolidated with Booker, because "the Reform Act [of Tennessee] authorizes a discretionary, non-mandatory sentencing procedure and requires trial judges to consider the principles of sentencing and to engage in a qualitative analysis of enhancement and mitigating factors . . . all of which serve to guide trial judges in exercising their discretion to select an appropriate sentence within the range set by the Legislature." State v. Gomez, 163 S.W.3d 632, 661 (Tenn. 2005). Effective July 1, 2005, the Tennessee General Assembly amended the sentencing act to reflect the advisory nature of enhancement factors.

When you read exhibit two and you compare it to the evidence received at trial it's like this isn't the same person. Mr. Allen certainly had many things going on his behalf and he at least outwardly showed to everyone that he was a very good person and, no doubt, also was showing that to the victim's mother.

I have read the presentence report, considering the principles of sentencing, the nature and characteristics of the criminal conduct involved. I also am considering the statement that Mr. Allen has made on his own behalf.

Now, I'm going to find that there are some mitigating factors. Number one that the conduct neither caused nor threatened serious bodily injury. I went back and read the definition of serious bodily injury and do not believe that this conduct created – or neither caused – start over. Mr. Allen's criminal conduct did not cause nor threaten serious bodily injury as defined under our code section. I will find that that is true; however, I give it very little weight under the facts of this case.

. . . .

Number 11, we look at the full range here of the first event involving the wife, Michelle Allen. From the trial and the video or the playing cards – I'm sorry; playing cards on the floor; that being one episode when Mr. Allen was present; then there being a second episode which this videotape was prepared and the child rape by Mr. Allen it's apparent that he – that these were not unusual circumstances to him in the sense that he did in fact sustain an intent to violate the law.

. . . .

13 has application: He did make a statement; he has no criminal history. I believe the case law requires that that be part of number 13 and I will give it some weight.

As I stated before exhibit number two provides many good things about Mr. Allen including his employment and relationship with other people. He has today expressed some degree of remorse. The Court will consider all of those in mitigation.

As far as enhancement factors . . . .

Number three, the showing of this videotape to this young man, getting all of this started, certainly to me, shows that he was the leader. The leader in the sense of the leader between he and his wife, Michelle Allen. So that enhancement factor number three is found.

. . . .

Eight is the offense involved a victim and was committed to gratify the defendant's desire for pleasure or excitement. The showing of this video, the engaging of these acts has been established, child rape. Showing of the video to the minor; this happening on more than one occasion; the evidence certainly establishes that this offense, and particularly the offense of exploitation and child rape, were for pleasure or excitement.

. . . .

That brings us to 16. Testimony is very clear in this case that Ms. Meadows trusted Mr. Allen particularly to present a male fatherly image that this victim needed. It's apparent from the proof that this victim was in the home of the Allens on many occasions not just two occasions, and that Mr. Allen particularly was trusted by the mother of this child and allowed this child to be in the home.

Mr. Allen abused that position of private trust and showed this video that the jury saw to the victim, watched as his wife and the victim engaged in certain acts, then on a different occasion committed the offense of child rape and videotaped it. The Court will find that he did in fact violate a private trust.

. . . .

So I'll find the mitigating factors apply to all of the offenses. The enhancement factors also would apply to all of these – or all three of these.

. . . .

In sentencing Mr. Allen, as I said I've done a great deal of thought about this. In count four, which is the class A misdemeanor, Mr. Allen will have a sentence of 11 months and 29 days; of course, he has more than satisfied that sentence by pretrial confinement.

Especially aggravated sexual exploitation, the presumed sentence is eight years. Based on the weight of the mitigating and enhancement factors, and I am giving a great deal of weight to that under the circumstances of the trust that was provided to Mr. Allen by the mother of this child, and sentence Mr. Allen to ten years as a range one offender.

In count six, presumptive sentence is 20 years. Weighing the mitigating and enhancement factors I'm going to sentence Mr. Allege [sic] to 24 years. That is a one hundred percent sentence as required by law.

-10-

Now, I'm going to run all of these concurrent with each other. It's my belief that Mr. Allen has – is going to be in his 50s when he is released; he will be sentenced to community supervision for life. He's going to be close to 60 and there's really no purpose to be served by ordering consecutive sentences, so I will not order consecutive sentencing.

The defendant specifically argues that the trial court misapplied two enhancement factors: enhancement factor (3), that "the defendant was a leader in the commission of an offense involving two (2) or more criminal actors" and enhancement factor (8), the "[t]he offense involved a victim and was committed to gratify the defendant's desire for pleasure or excitement." Tenn. Code Ann. § 40-35-114 (3) & (8).[3]

As for factor (3), the defendant was a leader in the commission of the offense, we have reviewed the record and found ample support for the trial court's application of this factor. During the trial, Detective Carlisle testified that he took a statement from the defendant, Mr. Allen. A written copy of the statement was included as evidence at trial. In that statement, Mr. Allen stated, "anything my wife might have done was total coercion and manipulation on my part." Clearly, this supports the application of this factor.

Defendant Mr. Allen also argues that the trial court erred in applying factor (8), that the offense was committed to satisfy the defendant's desire for pleasure or excitement. The defendant argues that there is nothing in the record to support this enhancement factor. Mr Allen cites State v. Kissinger, 922 S.W.2d 482 (Tenn. 1996), to support his position. Kissinger involved two separate defendants, Michael R. Kissinger and Guy Phelan Roberson. Kissinger was convicted of one count of aggravated rape and one count of aggravated sexual battery against children under the age of thirteen. Roberson was convicted of aggravated rape against a child under the age of thirteen, which was reduced on appeal to aggravated sexual battery and remanded for resentencing. In both cases that trial courts applied as an enhancement factor that the offense "was committed to gratify the defendant's desire for pleasure or excitement." Our supreme court held that this enhancement factor could not apply to sexual battery because it is an element of the offense. As to Kissinger's rape conviction, the supreme court held that the fact that the defendant had reached orgasm was not enough, in itself, to support the application of this factor. Id. at 490-91. Rather, there must be additional evidence as to a perpetrator's purpose. Id. at 490.

In a case subsequent to Kissinger, State v. Arnett, 49 S.W.3d 250, 262 (Tenn. 2001), the Tennessee Supreme Court stated that the State must "provide additional objective evidence of the defendant's motivation to seek pleasure or excitement" when applying this enhancement factor.

---

[3] The numbering of the enhancement factor statute, Tennessee Code Annotated section 40-35-114 has changed since the sentencing hearing. Enhancement factor (3) as referred to by the trial court is now factor (2), enhancement factor (8) is now factor (7) and enhancement factor (16) is now enhancement factor (14). We will refer to the enhancement factors as the same numbers as the trial court to minimize confusion.

-11-

Additional evidence can include "sexually explicit remarks and overt sexual displays made by the defendant, such as fondling or kissing a victim or otherwise behaving in a sexual manner . . . ." Arnett, 49 S.W.3d at 262.

There was no evidence as to any sexually explicit remarks. However, repeatedly showing the victim pornographic videotapes could be considered as behaving in a sexual manner. It also appears that the sexual relations between the defendant and the victim were not forced upon the victim by the defendant. After being exposed to sexually explicit media and sexual relations with the defendant, the victim continued to go to the defendants' home. Also there was evidence that Mr. Allen and his wife watched the videotape of the victim and himself engaging in mutual fellatio. Mrs. Allen also stated in her written statement that she watched this video with her husband before the videotape was erased. There was also evidence in the sentencing reports that the defendants were "swingers" and had an "open marriage." There was evidence that the defendants engaged in what might be considered by many to be an unusual sex life. This habit of open sexual behavior could certainly lead to the conclusion that the defendant was excited by such behavior. Therefore, we conclude that the defendant Mr. Allen engaged in exposing the victim to sexually explicit media, videotaping sexual acts with the victim and actually engaging in sexual relations with the victim to gratify the defendant's desire for pleasure. This enhancement factor would therefore apply to the defendant, Mr. Allen.

The trial court followed the procedure as set out in our statutes for determining a defendant's sentence. Therefore there is a presumption that the trial court's findings and determinations are correct. We conclude that the trial court correctly applied these enhancement factors. We have reviewed the trial court's findings, as well as, the record and conclude that there was ample support for Mr. Allen's sentence as imposed by the trial court.

**Michelle Allen**

At Mrs. Allen's sentencing hearing, the trial court made the following findings:

The court is required to make certain findings. This is a class A felony. It is a child rape. The range of punishment is 15 to 25 years however, as a class A felony the presumptive sentence is the mid point of the range, which is 20 years. As a child rape it is required by law that there is no parole, there is no good time and a person serves one hundred percent of the sentence. The court is well aware of that.

. . . .

Number two – so I will find that there is a mitigating factor of neither causing nor threatening serious bodily injury; however, I do not believe it has much weight in this case.

-12-

. . . .

Certainly the letters are significant in providing under any other factor consistent with the purposes of this Chapter. She had no prior record, she has a good work history; clogging instructor, church attendant, all of those are just examples of those matters that are contained in exhibit two.

Under 40-35-114 – let me go back to 40-35-113, mitigating factors so that there will be no misunderstanding. I do find that number one applies, which is reference to serious bodily injury, and number 13; and I find that none of the others are found by the evidence.

Under 40-35-114, and I'm using the new code number so that one act of terrorism has no application.

. . . .

Number eight is the offense involved a victim and was committed to gratify the defendant's desire for pleasure or excitement. Now, this doesn't always apply in rape or child rape cases. But the statement is July 16th, again, 2002, Michelle Allen: My husband and I and [the victim] were sitting in the floor of the living room playing cards. [The victim], as always, that night wanted to run around the house nude. I ended up nude. At some point I performed oral sex on [the victim]; my husband was present. Also I don't recall exactly, but I think [the victim] performed oral sex on me. Also [the victim] attempted to have sex with me, and he did penetrate me with his penis. I don't recall if he penetrated me with finger or not. This is the only time that I ever had sex with [the victim].

That and the description as given by this victim is such that it – Court finds that it was committed to gratify the Defendant's desire for excitement.

. . . .

Then we can back [sic] to 16. The evidence is – as presented in the trial of this case was that this victim had been in the home on many occasions. His mother has testified that she was looking for a male image to be a guide for this victim. Ms. Allen was certainly in a position of private trust under those circumstances when down on the floor playing cards with her husband and this victim, ended up being nude, according to her statement, and the proof in this matter.

17 does not apply. 18 does not. 19, 20, 21, 22 and 23 do not apply. So, I am finding that number eight and number 16 do apply in this case under 40-35-114.

-13-

The legislature has set that this is a sentence that must be served in the Tennessee Department of Corrections. This is no probation available; it must be served.

Balancing the mitigating factors versus the enhancement factors I'm going to sentence Ms. Allen to 21 years in the state penitentiary. She'll have credit for the time that she has served. . . .

The defendant, Mrs. Allen, argues that enhancement factors eight and sixteen were misapplied by the trial court.[4] Factor eight is that the offense was committed to gratify the defendant's desire for pleasure or excitement. As stated above, this factor requires additional proof of the defendant's desire to seek pleasure. Arnett, 49 S.W.3d at 262. Under Kissinger and Arnett, there must be "additional objective evidence." Having reviewed the record, we find that the evidence listed above for Mr. Allen, including the fact that the defendants were "swingers," Mrs. Allen watched the videotape of the mutual fellatio between Mr. Allen and the victim, and that the sexual relations between Mrs. Allen and the victim were consensual, in addition to the defendants' sexual behavior, lead to the conclusion that Mrs. Allen had sexual relations to gratify her desire for pleasure and excitement. We find that this enhancement factor was properly applied.

The second enhancement factor, that the defendant was in a position of private trust, is clearly appropriate in this case. The defendant and her husband invited the victim to their house and knew the victim's mother. Clearly, the defendant was in a position of private trust.

The trial court followed the sentencing procedures set out in the statute. After starting at the presumptive sentence of twenty years, which is the mid-range of a Class A felony as a Range I offender, the trial court enhanced the defendant's sentence by only one year. We have determined the trial court properly applied the two enhancement factors.

Therefore, this issue is without merit.

## Blakely v. Washington

Both defendants argue that the trial court applied the enhancement factors contrary to Blakely v. Washington, 524 U.S. 296 (2004). The Tennessee Supreme Court recently determined that Blakely did not announce a new rule of law and that "the Tennessee Criminal Sentencing Reform Act does not authorize a sentencing procedure which violated the Sixth Amendment right to jury trial." State v. Gomez, 163 S.W.3d 632, 651 n.16 (Tenn. 2005). In Gomez, the court determined

---

[4] The numbering of the enhancement factor statute, Tennessee Code Annotated section 40-35-114 has changed since the sentencing hearing. Enhancement factor(8) is now factor (7) and enhancement factor (16) is now enhancement factor (14). We will refer to the enhancement factors as the same numbers as the trial court to minimize confusion.

-14-

that despite the ability of trial judges to set sentences above the presumptive sentence based on the finding of enhancement factors neither found by a jury or admitted by a defendant, Tennessee's sentencing structure does not violate the Sixth Amendment and does not conflict with the holdings of Blakely v. Washington, 542 U.S. 296 (2004), United States v. Booker, 543 U.S. 220 (2005), or United States v. FanFan, the case consolidated with Booker, because "[t]he Reform Act [of Tennessee] authorizes a discretionary, non-mandatory sentencing procedure and requires trial judges to consider the principles of sentencing and to engage in a qualitative analysis of enhancement and mitigating factors. . . . [A]ll of which serve to guide trial judges in exercising their discretion to select an appropriate sentence within the range set by the Legislature." Gomez, 163 S.W.3d at 661. Thus, in order to determine a defendant's sentence, a trial court starts at the presumptive sentence, enhances the sentence within the range for existing enhancement factors, and then reduces the sentence within the range for existing mitigating factors in accordance with Tennessee Code Annotated section 40-35-210(e). No particular weight for each factor is prescribed by the statute; the weight given to each factor is left to the discretion of the trial court as long as it comports with the sentencing principles and purposes of our Code and as long as its findings are supported by the record. See State v. Santiago, 914 S.W.2d 116, 125 (Tenn. Crim. App. 1995).

Therefore, this issue is without merit.

## CONCLUSION

For the foregoing reasons, we affirm the judgments of the trial court with regard to both defendants.

_____
JERRY L. SMITH, JUDGE